Good morning, Your Honors. Dan Kornberg for the Petitioner-Chaos. This case revolves around the issue of whether or not there was one of the five enumerated grounds for relief under political asylum. The transcript really doesn't go to many issues that revolve around the... Well, you started off with a difficult situation here. Yes, I did. His application for asylum, when he appeared before the asylum officer, was stamped repeatedly. Applicant stated at interview that response is incorrect. Yes, Your Honor. The problem with it is in the transcript, it was never brought out as to what took place at the time of that interview, who prepared the application, how the application was prepared, and why the petitioner changed his mind at the time of his initial asylum interview. I'm looking at this document, and it's strange. I mean, I have to say this is the first of its kind I've ever seen in my eight years on the Court of Appeals looking at these cases. Because it's every single answer, even answers that you know would have to be correct, is stamped, applicant stated at interview that response is incorrect. Every single answer. It looks like the asylum officer's kid got a hold of the stamp and stamped it all over the page. Because there are things here that probably pretty clearly are true. But there are things here that would dramatically increase the probability of him getting, the likelihood of your client getting asylum if they were true. And I take it that you are not standing here today and telling us that those things in fact are correct. No, not since they were marked and he specifically stated that they were incorrect. The problem with all of that is none of us know, at least I don't know, we took the case on at the Ninth Circuit stage, and we were not present at the time of the original asylum interview, nor were we present at the time of the deportation hearing. I mean, it's possible that we could get an explanation. I have to say I'm a little hard-pressed to think that the explanation is going to be useful here. Your client had a full hearing. He walked away from everything that he said in his asylum application and offered a different story. So we start right up front by saying I came before an asylum officer and I lied about my reasons for coming to the United States. But the lie took place, he was sworn in, and at the time that he was sworn in, he admitted to the asylum officer that he was denying everything on the application. So therefore, based upon his sworn testimony, the courts have ruled that once you are sworn in, that's when the determination is made as to whether or not it is sworn testimony. The fact that he submitted the document to the INS with all the incorrect information on there is not necessarily considered to be fraudulent testimony. Like I said, the problem with it is we don't know who prepared the application. And the judge did not go into this issue at all in the deportation proceeding. In the deportation proceeding. The problem that I have with it is that, okay, he said that wasn't true. I mean, for all I know, this is somebody else's asylum application. And then his lawyer starts questioning, he wants to allow him to give the explanation, and the I.J. keeps cutting him off, cutting him off. You've already asked about that. It's just pages of he's not, you know, the thing that we're struggling with right now, not understanding how this came to be because it's so unusual. The I.J. wouldn't let the answers come into the record. For example, question, Mr. Chau, I'm showing to you an asylum application which was also shown to you by the court. Can you go over this application, the asylum application? Judge, excuse me, he's already done that, counsel. What else? Do you have any other questions? Yeah, because I would like to make it a record, Your Honor, you know, that he didn't apply in that application form. He's already testified that he stated at the interview that this response is incorrect, and that's sort of a disconnect. He stated that. Yes, Your Honor. Do you have anything else? Well, you know, then there's another attempt, I think, later to get into the document, and that's cut off as well. So, I mean, I don't really know what to do in this situation. If you read through the transcript, this judge took over for a judge that had retired. And if you go through the entire transcript, the judge cut off everybody. He cut off the government attorney. He kept asking. Very quick. He was very quick. Very quick. He cut off the government attorney saying, do you have any more? Do you have any more? Do you have any more? Is that it? Is that it? And really never allowed anybody to develop any type of testimony in this case. The other problem is that there must have been three or four different attorneys that took over this case. And originally, during the original proceedings with Judge Gordon, there was a request that a new asylum claim would be submitted. A new asylum claim was never submitted to the judge. So Judge Siegel, who took over the case for Judge Gordon, then just went forward with the asylum claim, which was stamped with all the statements of that. Let me ask you another question. You know, it gets to the BIA, and the BIA notes these problems. It says, this situation gives cause to doubt the respondent's credibility. And then it goes on on the next page and says, in any event, even accepting that the respondent provided credible testimony at the hearing, in other words, his story that he gave, the reasons why he believed he would suffer persecution or had been persecuted, or would suffer future persecution, what do we do with that? What do we do with the fact that the BIA says, even in the event, you know, what he said at the hearing is credible. In other words, is that all colored by the IJ's perception and everybody's perception of this application? I don't believe so, because of the fact that the judge still granted voluntary departure to the CHUAs. And voluntary departure, one of the grounds is that you are a person of good moral character. And if you come to the conclusion that their testimony was incredible, then why grant them voluntary departure? Why not order a deportation of these people based upon their incredible testimony and fraudulent testimony? The IJ cut your client some slack on that, but I'm not sure I would equate the moral character question with the question of complete credibility in the way that you testified. But let's turn to the, if you would, turn to the two grounds that your client claimed in the hearing that he was persecuted. One was that he discovered that his partner was embezzling funds. Now, how does that go to one of the protected grounds? That we would have a hard time reaching one of the protected grounds on. All right. The other was that a communist-affiliated union requested what he referred to as progressive taxation, which sounds like it might have been extorted payments of some kind to support their activities. He doesn't even own this company anymore. The company's been dissolved. So what's the problem if he goes back to the Philippines? What does he really have to fear? Well, imputed political opinion based upon his refusal to pay the taxes that the NPA or the KMU was requesting. He's concerned that a communist-affiliated union might continue to persecute him when he returned, even though he no longer owns a company that can pay the money? That's correct. The NPA and the KMU would continue to potentially consider his nonpayment of the political opinion. Does he have any evidence for that? Is there any evidence for that? Yeah. That they... That they will persecute him on his return to the Philippines. No. There's nothing that I can cite that would show, other than the fact that the NPA still has a foothold in the Philippines, that they still are considered to be politically involved and committing murders. The union that demanded the payment was the union that his employees belonged to. Isn't that correct? That's correct. Okay. And one last point, Your Honors, is that based upon what took place, I really don't believe that he did get a fair trial due process based upon the judges refusing to take any evidence in the testimony. He didn't take any of the country reports in the testimony. Let me ask you. Suppose, let's just assume that we were to send this back to give him an opportunity to explain. Now, let's say that he, I have no idea what he might do, but since speculation is, you know, seems to be in order in some of these cases, what if he were, you know, what if he goes back and he says, well, somebody else, you know, just made up a story and just concocted this whole application thing? The original application you're talking about? Well, like I say, Your Honors. What is all that? What do you hope to achieve at a new hearing? What would be your thrust? Some development of the case. Well, that's what I'm asking you. I'm asking you. You know your client. Presumably you've talked to him. Do you have some idea of what you would develop? Make a proffer. You know, I'm just kind of curious. You know, what would you do? Well, I would bring him before the judge for the purposes of showing that the NPA is still in existence and bringing testimony of expert witnesses. Isn't that in the country reports? It is in the country reports, but that was never taken into consideration by the judge. I know, but were the country reports part of the record? Yes, they were. Right. And the country reports say that, right? Yes, they do. So why would you have to go get expert testimony? That still exists. The previous question was if he goes back, how do you know that he would be at this point, since the company no longer is in existence, that he would be persecuted by the NPA at this point in time? So there would have to be some testimony. Didn't he have an opportunity to do that at the first hearing? I know this judge was short. I completely agree that he seemed to cut off a lot of things. But your client had a full and fair opportunity to present a case that said, I've got threatening phone calls. Here are threatening letters. I've got family members. My former partners have bodyguards because of continuing threats. And that might have been interesting evidence. It might have been useful and relevant. He doesn't present any of that. Why should we give him a second chance? Because he failed after the first one. It's difficult to understand why he should be given a second chance. But if you take a look at the trial, at the transcript, the judge cut off every single avenue of his attorneys trying to ask him questions about anything that took place as he did cut off the government attorneys. Who was the immigration judge here? Judge Siegel. And that was the second judge that took over? That was the second judge that heard the case. What was the year of the hearing? I'm sorry, Your Honor? What was the year of the hearing? I believe the final hearing took place in 2000. You know, I for one, I mean, as I read this, look at this transcript, like Judge Fivey says. 1998, I'm sorry, Your Honor. He's rather short, and one does not get a great deal of satisfaction reading that transcript. But, you know, the BIA did say, even assuming he's credible, what he testified to at the hearing, he doesn't show that he satisfies one of the grounds or that he has a reasonable objective fear of future persecution. So I'm just curious. You know, that's my whole question. What do you – what would – Well, I think the judge could have taken judicial notice of the fact of imputed political opinion. Imputed political opinion has been – was upheld by this Court after the Elias Zacharias case to state that there – that's a ground for one of the five enumerated grounds. This judge never got to that issue, nor, unfortunately, was it brought up by his attorneys as one of the enumerated grounds. But imputed political opinion would be the ground that he could argue. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the Court. My name is Sue Wong, and I represent the Department of Justice. First of all, I just want to rest assure the Court that in this particular case, there was no explicit credibility finding, and therefore, the prior asylum application, whether it was considered fraudulent or credible or not, is not the issue here. The judge never made an explicit credibility finding, and therefore, as a result, we would assume that the Petitioner testified credibly under the circuit's law. And assuming that he testified credibly, the two incidents he described certainly does not – are not basis for a grant of asylum, and certainly the evidence does not compel. Well, what do you do with the application, then? It's pretty direct, right? Your Honor, the application is worrisome that he actually signed this application that was completely fraudulent, submitted it, and the staff – Obviously, in everything that's, you know, as Judge Bybee said earlier, the, you know, it's stamped just repeatedly, and obviously, there's some stuff here that is – that probably is true. Your Honor, the fact that the Petitioner, both at the asylum interview as well as before the immigration judge, disavowed any of the facts of the application, it is really not an issue before this Court so much. The immigration judge thought the fraudulent application was worrisome, but he didn't say that his testimony was not credible, per se. So I think this Court can feel okay not to have to worry about that particular application and why he submitted the application as such. The bottom line is the judge never explicitly found him not credible. And so we have to look to his testimony as if he testified credibly. Right. And then – so then we go to the BIA. And now we're – in this case, we're reviewing the BIA's decision because it wasn't a summary affirmance. And the BIA says that the Petitioner discounted the contents of this application before an asylum officer. So it is considering the asylum application. And then it says, at his proceedings before the immigration judge, the Respondent did not explain why this application had been submitted, if false, and he did not provide a new and correct application. And so – and then he finds that that casts doubt on his credibility. But we can see from reading that the Petitioner wasn't allowed an opportunity to do that. So then we go on and we go to the – we go to the merits because we're going to assume that he's credible and truthful. Well, he argues that he has imputed political opinion that was opposed to the KMU and he received threats. And I'm wondering why imputed political opinion would not be an enumerated ground here, because that seems to be the basis of the BIA's finding. Your Honor, the fact of the matter is there was no imputed political opinion. He objected to paying the progressive tax based solely on the welfare of the company and that he pay taxes to the government already, that there's no need to pay taxes to KMU. And so there was no mixed motive type of imputed political opinion in here, which in some other cases before this Court, this Court has found that to be the case. So in this particular instance, the Petitioner just said he didn't want to pay the money for the good of the company. He never had any political affiliation whatsoever. He testified that he's not associated with any group. He didn't object to this tax because he objected KMU. He never said anything of that nature. He strictly objected to the tax based on the welfare of the company for which he was a CEO of. Therefore, there is no imputed political opinion whatsoever in this instance. We also want to rest assure the Court that in terms of due process, the Petitioner had an interview before the asylum officer where he basically gave him a different story from his asylum application. Thereafter, he also had a hearing before the immigration judge, and the case went up to the board, and the board, because it initially summarily dismissed it, this Court, in agreement with the government, the Petitioner and the government, decided to remand this case back to the BIA, and the BIA had a chance to review this case on the merits, and the BIA also determined that there was no persecution. And so, Your Honor, we would submit that the Petitioner had ample opportunity to present his case through a series of opportunities. And the fact that the immigration judge may have been short, he was perhaps perturbed at the fraudulent application or what have you. We don't know why. But in any event, the Petitioner had a full and fair hearing. He had many opportunities to present his case, and right now the case is before this Court as well. And so we would ask the Court to deny this petition for review. Thank you. Thank you, counsel. This case will be submitted. Chavez v. Gonzalez. And we will take up Gazarian v. Gonzalez. Thank you.
judges: Wardlaw, Paez, Bybee.